UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID M. MULLINS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>STATE OF INDIANA, )<br>MIKE MILLER, )<br>DAVID NAUTH, )<br>HEATHER WHITAKER, )<br>)<br>Defendants. ) | No. 1:20-cv-02900-JPH-TAB |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, David Mullins, was fired after a month working as a metrologist for the Indiana State Department of Health. He sued the state of Indiana and three of its employees, alleging that they fired him because of his disability. *See* dkt. 63. Defendants have filed a motion for summary judgment. Dkt. [76]. For the reasons below, that motion is **GRANTED in part and DENIED in part**.

**I.
Facts and Background**

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

In early 2019, Mr. Mullins applied to be a Weights and Measures Metrologist—someone who ensures the accuracy of weights and measurements—with the Indiana State Department of Health ("ISDH"). Dkt.

1

80-10 at 22–23 (Mullins Dep. at 84–85). He passed a pre-interview test—scoring well enough to qualify for a Department of Commerce metrologist training—and then had an "impressive" interview. Dkt. 80-8 at 15–16 (Miller Dep. at 28–29). ISDH hired Mr. Mullins as a Metrologist in April 2019. Dkt. 76-2.

On Mr. Mullins's third day with ISDH, a supervisor—Defendant Michael Miller—emailed ISDH's HR specialist—Defendant Heather Whitaker—about time that Mr. Mullins had missed during his first three days. Dkt. 80-6; *see* dkt. 80-8 at 13 (Miller Dep. at 25). Ms. Whitaker and Mr. Miller talked with Mr. Mullins about attendance expectations but did not discipline him. Dkt. 80-6; dkt. 80-9 at 20–21 (Whitaker Dep. at 23–24). In one of the emails, Mr. Miller added a concern about Mr. Mullins's physical ability to work:

> [Mr. Mullins] was struggling yesterday while working with [another metrologist] in the labs bending over, kneeling down taking readings, if he has issues performing metrologist task[s] we can't afford to keep him. (Just saying).

Dkt. 80-6. After talking with Mr. Mullins, Ms. Whitaker responded:

> As for your observed physical concerns, set your expectations on the physical requirements of the job and expect [Mr. Mullins] to do it. Do not ask him about any health issues. He needs to bring this up himself unless it's just blatantly obvious. If he can't perform his essential functions due to health reasons, he'll need to have his doctor complete an accommodation form with suggestions and we'll see what happens.

*Id.*

2

About two weeks later, Mr. Miller counseled Mr. Mullins for falling asleep at work. Dkt. 76-6 at 1. ISDH does not consider counseling to be discipline. Dkt. 80-9 at 12 (Whitaker Dep. at 15). After the counseling, Mr. Mullins changed prescriptions and the issue was resolved. Dkt. 80-10 at 49–50 (Mullins Dep. at 144–45); dkt. 80-8 at 39–40 (Miller Dep. at 61–62).

On May 24, 2019—about a month after Mr. Mullins started—Mr. Miller emailed ISDH's other metrologist, Howard Wickersham, to ask about Mr. Mullins's progress. Dkt. 80-5 at 3–4. Mr. Wickersham replied that on a scale of 1 to 10 ("10 being 'catching on fast' and 1 being 'totally not getting the idea'"), Mr. Mullins was "at a 4." *Id.* at 3. He added that Mr. Mullins will "need many more demonstrations," could not yet operate alone, and could not write a Microsoft Excel formula. *Id.* Mr. Miller forwarded that response to Ms. Whitaker, saying that he "would like to terminate [Mr. Mullins's] employment." *Id.* After Ms. Whitaker responded with questions to "ensure we are fair and consistent," Mr. Miller added that Mr. Mullins "has had difficulty staying awake, he has difficulty kneeling, standing for any period of time, and overall physical exertion tires him." *Id.* at 1.

A few days later, on May 31, 2019, ISDH fired Mr. Mullins:

> Dear David,
>
> Per the discussion had on May 10, 2019 about sleeping while at work and subsequent observation of your work, knowledge, skills and abilities you have not successfully met the expectations of your position. Thus, you are hereby notified that effective today, your employment is terminated in accordance with IC 4-15-2.2-24 which provides "An employee in the unclassified service is an employee at will and serves at the pleasure of the employee's appointing authority…and may be dismissed, demoted, disciplined or terminated for any reason that does not contravene public policy." This action may be appealable in accordance with IC 4-15-2.2-42. A civil service complaint form and eligibility information are available at http://www.in.gov/spd/2399.htm.

3

Dkt. 76-7 (termination letter). Mr. Miller did not know why sleeping at work was mentioned in the letter because "that issue had been resolved." Dkt. 80-8 at 80 (Miller Dep. at 129).

Mr. Mullins brought this action in November 2020, initially proceeding *pro se*. Dkt. 1; dkt. 6 (second amended complaint). After the Court denied Defendants' motion to dismiss, dkt. 46, counsel appeared for Mr. Mullins and filed an amended complaint, dkt. 63 (operative complaint). Mr. Mullins alleges that he was fired because of his disabilities in violation of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Fourteenth Amendment's Equal Protection Clause. *Id.* Defendants have moved for summary judgment. Dkt. 76.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584.

### III.
### Analysis

Mr. Mullins alleges ADA and Rehabilitation Act claims against the State of Indiana and a Fourteenth Amendment equal protection claim, brought through 42 U.S.C. § 1983, against State employees Mike Miller, David Nauth, and Heather Whitaker. Dkt. 63 at 8–10; *see Sandefur v. Dart*, 979 F.3d 1145, 1156 (7th Cir. 2020) ("Unlike the ADA and other employment discrimination laws, under which the proper defendant is the employer itself, § 1983 focuses primarily on individual liability."). Defendants argue that they are entitled to summary judgment on all claims. *See* dkt. 76; dkt. 77.

**A. ADA and Rehabilitation Act**

Both the ADA and Rehabilitation Act prohibit employers from discriminating because of an employee's disability. *See A.H. v. Ill. High Sch. Ass'n*, 881 F.3d 587, 592 (7th Cir. 2018) (citing 29 U.S.C. § 794(a); 42 U.S.C. § 12132). To succeed on his ADA and Rehabilitation Act claims, Mr. Mullins must show that (1) he was disabled[1], (2) he "was qualified to perform essential functions [of his job] with or without reasonable accommodation," and (3) disability was the cause of his termination. *Scheidler v. Indiana*, 914 F.3d 535,

---

[1] The State does not contest at this stage that Mr. Mullins was disabled. Dkt. 77 at 7.

5

541 (7th Cir. 2019).[2]  The State argues that it's entitled to summary judgment because the undisputed evidence shows that Mr. Mullins was not qualified and was not terminated because of a disability.  Dkt. 77 at 9–10.

### 1. Qualifications

The State contends that Mr. Mullins "lack[ed] the requisite [Microsoft] Excel skills" to "work[ ] independently as a metrologist for the State."  *Id.*  It has designated evidence that Excel skills were "critical" for the position and that metrologists had to "be able 'to enter, transcribe, record, store, and maintain information'" in Excel.  Dkt. 76-8 at 7–8, 20 (Miller Dep. at 47–48, 65); dkt. 76-3.  Mr. Miller testified that Mr. Mullins struggled in "[s]earching the files, putting in the appropriate data and saving the files."  Dkt. 76-8 at 8 (Miller Dep. at 48).  The State also argues that Mr. Mullins "conceded that he did not understand how to do some of the Excel data entry."  Dkt. 77 at 5.

Looking at all the designated evidence, however, reveals factual questions regarding the specific level of Excel skills, if any, that were required for a newer metrologist, and whether Mr. Mullins's Excel skills during his first month of employment were sufficient to meet any such expectations.  Mr. Mullins explained his alleged concession—that he "didn't particularly understand some

---

[2] In addition to disability discrimination, the ADA and Rehabilitation Act allow failure-to-accommodate claims, *Scheidler*, 914 F.3d at 541, but Mr. Mullins has not alleged failure to accommodate here, *see* dkt. 63 at 8–9; dkt. 89 at 23 n.5.  The Court therefore need not address the State's argument that Mr. Mullins failed to inform ISDH of his disability and did not request an accommodation.  *See* dkt. 77 at 11–12; *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 803–04 (7th Cir. 2005) (explaining that "a plaintiff alleging a failure to accommodate" must prove the defendant's knowledge of the disability).

of the data entry that they were doing at ISDH"—as expressing a concern that ISDH's method wasn't reliable, rather than admitting a lack of Excel skills. Dkt. 80-10 at 8–10 (Mullins Dep. at 31–33) ("It seemed to me . . . that they would enter data [in a way that] they could manipulate the outcome . . . . How do I know that number that somebody else wrote down is correct?"). Moreover, Excel skills were not mentioned in the job description, *see* dkt. 76-3, and no one asked about them in Mr. Mullins's interview, *see* dkt. 80-10 at 27–28 (Mullins Dep. at 89–90). And Mr. Miller described the relevant Excel skills as "copy[ing] and past[ing] data from file to file," dkt. 80-5 at 1, which Mr. Mullins could do and had done "since the '90s," dkt. 80-10 at 8–9 (Mullins Dep. at 31–32).

A jury could reasonably find from the designated evidence that Mr. Mullins's level of Excel skills matched what was expected for a metrologist during the first month of employment. Or a jury might reasonably find the opposite. Either way, making the necessary factual findings will require weighing evidence and making credibility determinations—tasks that must be done by a jury at trial rather than at summary judgment. *See Xiong v. Bd. of Regents of Univ. of Wisc. Sys.*, --- F.4th ----, 2023 WL 2421710 at *4 (7th Cir. Mar. 9, 2023) ("It is up to the jury, not a court at summary judgment, to unravel the competing . . . narratives.").

### 2. Causation

To show causation on his ADA claim, Mr. Mullins must show that he would not have been fired "but for" his disability, and for his Rehabilitation Act

7

claim that the termination was "solely by reason of" disability. *Swain v. Wormuth*, 41 F.4th 892, 899 (7th Cir. 2022); *Kurtzhals v. County of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020).³  A defendant is not entitled to summary judgment on causation if the evidence, considered as a whole, "would permit a reasonable factfinder to conclude that the plaintiff's [disability] caused the discharge."  *Monroe v. Ind. Dept. of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017).

The State contends that Mr. Mullins was not terminated because of a disability, but because he lacked Excel skills and "refus[ed] to perform work assigned to him."  Dkt. 77 at 9–10.  Mr. Mullins responds that those reasons are pretext for discriminatory animus, so summary judgment should be denied. Dkt. 89 at 31.  If a reasonable jury could find that an employer's stated reasons for termination are "pretext for illegal discrimination"—instead of the true reason or a mixed motive—then summary judgment is inappropriate.  *Brooks v. Alvancez*, 39 F.4th 424, 429, 435 (7th Cir. 2022); *Perez v. Thorntons, Inc.*, 731 F.3d 699, 709–10 (7th Cir. 2013).  "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action."  *Brooks*, 39 F.4th at 435.

Here, there's designated evidence casting doubt on each of the State's reasons for the termination.  *See Coleman v. Donahoe*, 667 F.3d 835, 853 (7th

---

³ The "but for" standard does not allow an ADA claim based on "mixed motives" for a termination.  *Monroe v. Ind. Dept. of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017).  In *Kurtzhals*, the Seventh Circuit recognized the "open question in this circuit whether" a change in the ADA's language "affects the 'but for' causation standard."  969 F.3d at 728.  The Seventh Circuit has not resolved that question and Mr. Mullins accepts the "but for" standard, dkt. 89 at 32, so the Court applies it here to his ADA claim.  *See Kurtzhals*, 969 F.3d at 728.

8

Cir. 2012) (reversing summary judgment when "background facts cast doubt on" the employer's stated reasons).  The termination letter cited Mr. Mullins's sleeping at work, but he hadn't even been disciplined for that issue, dkt. 80-9 at 12 (Whitaker Dep. at 15) (ISDH did not consider the counseling he received to be discipline).  Moreover, Mr. Miller testified that the "issue had been resolved" and did not know why it was included in the termination letter.  Dkt. 80-8 at 80 (Miller Dep. at 129).  From this evidence, a jury could find that the first reason stated in the termination letter for ending Mr. Mullins's employment was pretextual.  Similarly, the State argues that Mr. Mullins lacked essential Excel skills, but as explained above, a reasonable jury could find that those skills weren't essential or that Mr. Mullins's Excel abilities qualified him for the position.

      The State next contends that Mr. Mullins refused to do work assigned to him.  *See* dkt. 77 at 5, 11.  But that was not a reason given to Mr. Mullins as a reason for his termination.  Dkt. 76-7 (termination letter); *see McCann v. Badger Mining Corp.*, 965 F.3d 578, 589–90 (7th Cir. 2020) ("Shifting and inconsistent explanations can provide a basis for a finding of pretext.").  The only evidence the State has designated in support of this alleged reason for terminating Mr. Mullins' employment is that he "declined" when ISDH's other metrologist—not a supervisor—asked him to work on a spreadsheet when Mr. Mullins was in the middle of required computer-based training.  Dkt. 76-1 at 12–14 (Mullins Dep. at 36–38).  The State therefore has not shown that Mr. Mullins "refused" a work requirement, allowing a reasonable jury to find that

9

this reason—offered for the first time in litigation—is pretextual. *See Runkel v. City of Springfield*, 51 F.4th 736, 745 (7th Cir. 2022) (if a reason is "on its face, an after-the-fact rationalization," a reasonable jury can find it pretextual).

In addition to that evidence casting doubt on the State's explanations for the termination, Mr. Mullins has designated evidence that his supervisors discussed his physical limitations throughout his tenure. On April 25, 2019—Mr. Mullins's third day on the job—Mr. Miller emailed Ms. Whitaker about how Mr. Mullins "was struggling yesterday while working with [another metrologist] in the labs bending over [and] kneeling down taking readings." Dkt. 80-6 at 1. He added that if Mr. Mullins "has issues performing metrologist task[s] we can't afford to keep him. (Just saying)." *Id.* About a month later, Mr. Miller and Ms. Whitaker again exchanged emails about Mr. Mullins's physical abilities. *See* dkt. 80-5. Mr. Miller said that he "would like to terminate [Mr. Mullins's] employment" and noted that Mr. Mullins "has had difficulty staying awake, [ ] has difficulty kneeling, standing for any period of time, and overall physical exertion tires him." *Id.* ISDH fired Mr. Mullins less than a week later. Dkt. 76-7. This designated evidence that Mr. Miller discussed his physical limitations in connection with his desire to fire Mr. Mullins is further circumstantial evidence of pretext. *See Perez*, 731 F.3d at 709–10 (denying summary judgment based in part on remarks showing impermissible bias).

In short, the reasons that the State has given for Mr. Mullins's termination are inconsistent and contradicted by designated evidence. That is "more than enough to create a question of fact concerning the legitimacy of its

explanations for [Mr. Mullins's] termination." *Peirick v. Ind. Univ.–Purdue Univ. Indianapolis Athletics Dept.*, 510 F.3d 681, 693 (7th Cir. 2007) (reversing summary judgment for employer based on "post hoc explanations, delay, exaggeration, and unusual conduct"); *see Hitchcock v. Angel Corps., Inc.*, 718 F.3d 733, 738 (7th Cir. 2013).

That evidence also allows a reasonable jury to find that the true reason for Mr. Mullins's termination was his disabilities. The emails between Mr. Miller and Ms. Whitaker connect comments about Mr. Mullins's physical limitations with the desire to terminate his employment, *see* dkt. 80-5, and he was fired a short time later without intervening discipline, *see* dkt. 76-7. *See Hitchcock*, 718 F.3d at 741–42 (finding, in the pregnancy-discrimination context, that a reasonable jury can infer illegal discrimination from animus in an employer's comments). A reasonable jury could therefore find that the State's proffered reasons were pretextual and that the true reason for Mr. Mullins's termination was a disability. *See Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016) (upholding a jury verdict because the evidence allowed the jury to find that the plaintiff "did not engage in the misconduct of which she was accused" or that it "was not generally seen as cause for termination at the company").

Summary judgment is denied on the ADA and Rehabilitation Act claims.

### B. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment prohibits the states from denying any person 'the equal protection of the laws.'" *Ostrowski v.*

11

*Lake Cnty.*, 33 F.4th 960, 966 (7th Cir. 2022) (quoting U.S. Const. amend. XIV).  Equal protection claims based on disability receive "rational basis review," meaning that the Individual Defendants' actions "pass muster so long as there is some rational relationship between the disparity of treatment and some legitimate governmental purpose."  *Id.*[4]  The parties agree that, to succeed on this claim, Mr. Mullins must show that (1) he was treated differently than others who were similarly situated, (2) the Individual Defendants irrationally treated him differently based on his disability, and (3) the difference in treatment was not rationally related to a legitimate state interest.  Dkt. 77 at 13–14; dkt. 89 at 33–34; *see Myers v. Sunman–Dearborn Comm. Schs.*, No. 4:20-cv-49-SEB-DML, 2022 WL 911554, at *8 (S.D. Ind. Mar. 29, 2022).  Identifying a similarly situated comparator is therefore "essential to the success" of the claim.  *Harvey v. Town of Merrillville*, 649 F.3d 526, 531 (7th Cir. 2011).

The Individual Defendants argue that they're entitled to summary judgment on this claim because Mr. Mullins has not identified a non-disabled employee who was treated more favorably.  Dkt. 77 at 13–14.  Mr. Mullins responds that ISDH's other metrologist, Howard Wickersham, was similarly situated and treated more favorably.  Dkt. 89 at 34.

---

[4] Mr. Mullins brings this claim through the cause of action created by 42 U.S.C. § 1983.  *See* dkt. 63 at 8.  In reply, the Individual Defendants argue "that the ADA precludes § 1983 remedies."  Dkt. 86 at 3–4.  That argument is waived because it was brought for the first time in reply.  *See Harris v. Warrick County Sheriff's Dep't*, 666 F.3d 444, 448 (7th Cir. 2012).  Moreover, most of the cases that they rely on prohibit using § 1983 as a cause of action for ADA violations rather than for constitutional violations like Mr. Mullins alleges here.  *See* dkt. 86 at 3–4.

"To be considered 'similarly situated,' a plaintiff and his comparators . . . must be identical or directly comparable in all material respects." *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010). "[I]n evaluating workplace equal protection claims," courts "consider whether the employees at issue had the same job description, dealt with the same supervisor, were subject to the same standards, and had comparable experience, education, and qualifications." *Harvey*, 649 F.3d at 531.

Here, a reasonable jury could find that Mr. Mullins and Mr. Wickersham were similarly situated. They held the same position as metrologists for ISDH, so it's reasonable to infer that they had the same job description and supervisor and were held to the same standards. *See* dkt. 76-1 at 24, 55 (Mullins Dep. at 101, 207). There's also evidence that when Mr. Wickersham was hired, he "had little Excel knowledge" and did not pass a required metrology course at least once. Dkt. 80-5 at 1. Moreover, in discussing Mr. Mullins's employment, Mr. Miller and Ms. Whitaker expressly compared Mr. Mullins's situation and the standards that Mr. Wickersham had been held to. *Id.* at 1–2. The only identified difference not related to Mr. Mullins's physical limitations—that Mr. Wickersham "picked [Excel knowledge] up rather quickly," *id.*—is too thin a reed to remove this issue from a jury, especially when Mr. Mullins's tenure at ISDH lasted barely more than a month. *See LaBella Winnetka*, 628 F.3d at 942 ("Whether a comparator is similarly situated is usually a question for the fact-finder."). The Individual Defendants are therefore not entitled to summary judgment on this basis.

13

Finally, Ms. Whitaker argues that she is entitled to summary judgment on this claim because she "was insufficiently personally involved in the alleged Equal Protection violation." Dkt. 77 at 14–15. Mr. Mullins responds that Ms. Whitaker "participated in multiple email conversations" about Mr. Miller's desire to fire Mr. Mullins and failed "to protect Mr. Mullins from this kind of discrimination." Dkt. 89 at 35. "Individual liability pursuant to § 1983 requires personal involvement in the alleged constitutional deprivation." *Carmody v. Bd. of Tr. of Univ. of Ill.*, 893 F.3d 397, 401 (7th Cir. 2018). To show personal involvement, a "plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id.*

Here, the only evidence that Mr. Mullins designates to show Ms. Whitaker's involvement is her emails with Mr. Miller about his desire to fire Mr. Mullins. *See* dkt. 89 at 35. But in those emails, Ms. Whitaker pumped the brakes by asking about the expectations on other employees "to ensure we are fair and consistent with our practices." Dkt. 80-5 at 2. She did not condone Mr. Miller's complaints about Mr. Mullins's physical limitations or suggest that they could warrant termination. *Id.*; *see* dkt. 80-6 at 1. Indeed, Mr. Mullins has not designated evidence that Ms. Whitaker approved or was even aware of the eventual termination before it was complete. *See* dkt. 89 at 35.[5] For these

---

[5] Mr. Mullins points out that Ms. Whitaker eventually referred Mr. Miller's continued complaints to another employee, who would "confer with our Employee Relations specialist and will follow up with you shortly thereafter." Dkt. 80-5 at 1. But there's no evidence that this was based on Mr. Mullins's disability or that Ms. Whitaker intended it to lead to Mr. Mullin's termination. "[I]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Carmody*, 893 F.3d at 401.

reasons, no reasonable jury could find a "causal connection" between Ms. Whitaker's actions and Mr. Mullins's termination.  *See Carmody*, 893 F.3d at 401–02 (affirming summary judgment for a supervisor who "had no responsibility" for the alleged due process violation).

Ms. Whitaker is therefore entitled to summary judgment on Mr. Mullins's § 1983 claim.

## IV.
## Conclusion

Defendants' motion for summary judgment is **GRANTED as to Ms. Whitaker and otherwise DENIED**.  Dkt. [76].  The **Clerk is directed** to remove Ms. Whitaker from the docket.  Magistrate Judge Baker is asked to hold a status conference to discuss settlement and trial readiness.

**SO ORDERED.**

Date: 3/28/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel.